Mr. Justice Clark,
dissenting.
While I join my Brother Stewart’s opinion, I have some additional observations with reference to this case.
The parties concede that the Colorado House of Representatives is now apportioned “as nearly equal in population as may be.” The Court does not disturb this stipulation though it seems to accept it in niggardly fashion. The fact that 45.1% of the State’s population resides in the area which selects a majority of the House indicates rather conclusively that the apportionment comes within the test laid down in Reynolds v. Sims, ante, p. 533, decided this date, vis.: “ ‘one person, one vote,’ ” that is, “approximately equal” or “ ‘as nearly as is practicable’ ” with only “some deviations . . . .” Indeed, the Colorado House is within 4.9% of being perfect. *874 Moreover, the fact that the apportionment follows political subdivision lines to some extent is also a teaching of Reynolds v. Sims, supra. But the Court strikes down Colorado’s apportionment, which was adopted by the majority vote of every political subdivision in the State, because the Senate’s majority is elected by 33.2% of the population, a much higher percentage than that which elects a majority of the Senate of the United States.
I would refuse to interfere with this apportionment for several reasons. First, Colorado enjoys the initiative and referendum system which it often utilizes and which, indeed, produced the present apportionment. As a result of the action of the Legislature and the use of initiative and referendum, the State Assembly has been reapportioned eight times since 1881. This indicates the complete awareness of the people of Colorado to apportionment problems and their continuing efforts to solve them. The courts should not interfere in such a situation. See my concurring opinion in Baker v. Carr, 369 U. S. 186, 258-259 (1962). Next, as my Brother Stewart has pointed out, there are rational and most persuasive reasons for some deviations in the representation in the Colorado Assembly. The State has mountainous areas which divide it into four regions, some parts of which are almost impenetrable. There are also some depressed areas, diversified industry and varied climate, as well as enormous recreational regions and difficulties in transportation. These factors give rise to problems indigenous to Colorado, which only its people can intelligently solve. This they have done in the present apportionment.
Finally, I cannot agree to the arbitrary application of the “one man, one vote” principle for both houses of a State Legislature. In my view, if one house is fairly apportioned by population (as is admitted here) then the people should have some latitude in providing, on a rational basis, for representation in the other house. The *875 Court seems to approve the federal arrangement of two Senators from each State on the ground that it was a compromise reached by the framers of our Constitution and is a part of the fabric of our national charter. But what the Court overlooks is that Colorado, by an overwhelming vote, has likewise written the organization of its legislative body into its Constitution,* and our dual federalism requires that we give it recognition. After all, the Equal Protection Clause is not an algebraic formula. Equal protection does not rest on whether the practice assailed “results in some inequality” but rather on whether “any state of facts reasonably can be conceived that would sustain it”; and one who attacks it must show “that it does not rest upon any reasonable basis, but is essentially arbitrary.” Mr. Justice Yan Devanter in Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 78-79 (1911). Certainly Colorado’s arrangement is not arbitrary. On the contrary, it rests on reasonable grounds which, as I have pointed out, are peculiar to that State. It is argued that the Colorado apportionment would lead only to a legislative stalemate between the two houses, but the experience of the Congress completely refutes this argument. Now in its 176th year, the federal plan has worked well. It is further said that in any event Colorado’s apportionment would substitute compromise for the legislative process. But most legislation is the product of compromise between the various forces acting for and against its enactment.
In striking down Colorado’s plan of apportionment, the Court, I believe, is exceeding its powers under the Equal Protection Clause; it is invading the valid functioning of *876 the procedures of the States, and thereby is committing a grievous error which will do irreparable damage to our federal-state relationship. I dissent.

The Court says that the choice presented to the electorate was hardly “clear-cut.” The short answer to this is that if the voters had desired other choices, they could have accomplished this easily by filing initiative petitions, since in Colorado 8% of the voters can force an election.